**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **TERRY JAMAR NORRIS,** | ) |
| | ) |
| **Plaintiff,** | )     **No. 3:13-cv-00542** |
| | )     **Judge Trauger** |
| **v.** | ) |
| | ) |
| **THOMAS SCHAUMAN,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**M E M O R A N D U M**

The plaintiff, an inmate at the West Tennessee State Penitentiary (WTSP) in Henning, Tennessee, brings this *pro se, in forma pauperis* action pursuant to 42 U.S.C. § 1983 against WTSP Unit Manager Thomas Schauman and inmate Terry L. Phillips. The plaintiff alleges that, because the plaintiff is an African American, the defendants violated his due process and equal protection rights by falsifying evidence used against the plaintiff in a disciplinary hearing. (Docket No. 1).

The plaintiff's complaint is before the court for an initial review pursuant to 28 U.S.C. § 1915A(a) & (b).

**I.      PLRA Screening of the Complaint**

Under the Prison Litigation Reform Act (PLRA), the courts are required to dismiss a prisoner's complaint if it is determined to be frivolous, malicious, or if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b). A complaint is frivolous and warrants dismissal when the claims "lack[] an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Claims lack an arguable basis in law or fact if they contain factual allegations that are fantastic or delusional, or if they are

based on legal theories that are indisputably meritless. *Id.* at 327-28; *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198-99 (6th Cir. 1990).

Although *pro se* complaints are to be construed liberally by the court, *see Boag v. McDougall*, 454 U.S. 364, 365 (1982), the court is required to dismiss a complaint brought by a plaintiff proceeding *in forma pauperis* "at any time the court determines" that the complaint is frivolous, malicious, or fails to state a claim on which relief may be granted, 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).

## II.   Allegations

The complaint alleges that, at all times relevant to this action, defendant Terry Phillips was a prisoner of the state of Tennessee housed at Riverbend Maximum Security Institution (Riverbend) acting as a "jailhouse snitch." In his role as a snitch, Phillips provided confidential information to institutional staff for the purposes of assisting in maintaining the security of the institution.

According to the complaint, on June 6, 2013, Phillips was injured in an altercation with a fellow inmate, who is a White Supremacist gang member. When defendant Unit Manager Schauman contacted Phillips about his injuries, Schauman informed Phillips that "if he did not name someone as being responsible for causing his injuries he would be placed in Protective Custody and Transferred to another prison. But that if Phillips would give a name Schauman would protect him from any disciplinary action or being transferred." (Docket No. 1 at p. 3). The complaint alleges that, after and as a result of Schauman's directive, Phillips provided a fabricated statement to Schauman, naming the plaintiff as the assailant because the plaintiff is black and Phillips wanted to protect a White Supremacist gang member.

The complaint alleges that Schauman knew Phillips's statement was false but Schauman

2

issued a disciplinary report charging the plaintiff was assault anyway based on Phillips's statement. According to the complaint, Schauman and Phillips conspired to deviate from Tennessee Department of Corrections policy of turning over confidential information to the institutional investigator in order to avoid a full investigation of the events surrounding Phillips' altercation on June 6, 2012.

Based on the testimony of Schauman and the confidential statement of Phillips, the disciplinary board found the plaintiff guilty of assault. As a result of being found guilty of the assault, the plaintiff was transferred from Riverbend to WTSP. While the plaintiff was housed at Riverbend, his family commuted forty-five minutes every weekend to visit him. However, since being transferred to WTSP, the plaintiff's family commutes approximately three hours for visits with the plaintiff. In addition, while housed at Riverbend, the plaintiff was assigned as a skilled worker and earned approximately sixty dollars a month for working that assignment. Since being transferred to WTSP, however, the plaintiff's pay has been lowered and he has not been given a job assignment. Finally, the plaintiff had access to higher education opportunities through Vanderbilt University and American Baptist College while housed at Riverbend but, as a result of his assault conviction, the plaintiff is unable to participate in these classes.

## III.    Section 1983

To state a claim under § 1983, the plaintiff must allege and show:  (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986));  *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir.

1998).  Both parts of this two-part test must be satisfied to support a claim under § 1983.  *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

## IV.  Analysis

First, the plaintiff contends that the defendants denied his constitutional right to due process. For several years, it was well settled that an inmate facing the possibility of disciplinary sanctions was entitled to a certain degree of procedural due process.  *Wolff v. McDonnell*, 418 U.S. 539 (1974).  This process included advance written notice of the charge, a hearing to resolve the charge during which the accused could present documentary evidence and call witnesses, and a written statement from the fact-finder describing the evidence relied upon and the reasons for the disciplinary action taken.

The Supreme Court, however, changed the methodology used to determine whether an inmate has a liberty interest worthy of due process protection.  *See Sandin v. Conner*, 515 U.S. 472 (1995).  Federal courts are no longer required to examine the language of prison regulations to ascertain whether substantive restrictions have been placed upon the discretion of prison officials. Rather, the court's inquiry now focuses on whether the imposition of a particular disciplinary sanction "presents the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  *Sandin*, 515 U.S. at 485.

The *Sandin* opinion reaffirmed that, when a prison disciplinary sanction directly affects the length of a prisoner's incarceration, the prisoner has an inherent liberty interest subject to the procedural safeguards announced in *Wolff*.  *Id.* at 487.  However, when the disciplinary sanction contemplated would not "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the procedural due process described in *Wolff* does not apply.  *Id.*

4

at 473.

Here, the complaint fails to allege that the disciplinary sanctions, including his transfer to WTSP, imposed on the plaintiff as a result of the assault conviction by the disciplinary board affected the length of his incarceration. The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility. *Watkins v. Curtin*, No. 1:05-cv-267, 2005 WL 1189602, at *2 (W.D. Mich. May 19, 2005) (citing *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Moody v. Daggett,* 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano,* 427 U.S. 215, 244 (1976)). In addition, prisoners have no constitutionally cognizable right to participate in rehabilitative or educational programs. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989); *Kenner v. Martin*, 648 F.2d 1080, 1081 (6th Cir. 1981)(*per curiam*); *Carter v. Corrs. Corp. of Am.*, No. 98-6336, 1999 WL 427352, at *1 (6th Cir. June 15, 1999). Thus, without a protected liberty interest in his facility placement, his prison job, or the college education programs, the plaintiff cannot successfully claim that his due process rights were violated.

Next, the plaintiff alleges that the defendants violated his equal protection rights. A prison inmate alleging an equal protection violation must demonstrate that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988); *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992). The plaintiff here alleges that Schauman and Phillips victimized him because is an African American.

As noted above, in order to state a claim under § 1983, the plaintiff must sue a person or entity who may fairly be said to be acting "under color of state law" or as a state actor. 42 U.S.C.

5

§ 1983.  The complaint alleges that defendant Schauman is an employee of WTSP, but it is unclear from the current record whether defendant Phillips, who is an inmate, should be considered to be an employee or agent of WTSP.  The Sixth Circuit has declined "'to establish a per se rule that the activities of paid government informants must always be considered government action.'" *Hiser v. City of Bowling Green*, 42 F.3d 382, 383 (6th Cir. 1994)(quoting *Ghandi v. Police Dep't*, 823 F.2d 959, 963 (6th Cir. 1987)).   Federal courts may find informants to be acting under color of state law for § 1983 purposes "if the informant acts in an investigatory capacity at the direction of or under the supervision of governmental authorities and if there is a nexus between the informant's activities and the activities of the authorities themselves." *Harper v. Bohanan*, 2006 WL 319029, at *17 (E.D. Tenn. Feb. 8, 2006)(citations and internal quotation marks omitted).  However, other courts have determined that private actors, without proof of a "close nexus" to law enforcement officers, are not state actors for § 1983 purposes even when they provide a false report to the police.  *Id.* (citing *Ferebee v. Smith*, 2005 WL 2709488, at *3 (D.S.D. 2005); *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988)).

For purposes of the initial screening required by the PLRA, the court finds that the plaintiff has stated colorable equal protection claims under 1983 against both Schauman and Phillips. However, the court cautions that this a preliminary finding only and, in particular with respect to defendant Phillips, further inquiry must be made as to whether he can be considered a state actor for purposes of the plaintiff's § 1983 claim in this case.

## V.     Conclusion

For the reasons explained above, the court finds that the complaint states colorable equal protection claims against defendants Schauman and Phillips.  28 U.S.C. § 1915(e)(2).  Therefore,

6

process shall be issued with respect to those claims.

However, the plaintiff's § 1983 claims alleging due process violations will be dismissed for failure to state a claim upon which relief can be granted as to both defendants.

An appropriate Order will be entered.

_____
Aleta A. Trauger
United States District Judge

7